**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **THOMAS RAMOS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JORGE SILVA, VICTOR MORENCY, and SCOTT STANTON,**<br><br>**Defendants.** | ) | **Civil Action No.**<br>**16-10083-FDS** |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND, PLAINTIFF'S MOTION TO AMEND THE COMPLAINT, AND DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This is a civil rights action arising out of an arrest for trespassing. The complaint was filed by plaintiff Thomas Ramos on October 6, 2015. The named defendants are officers of the Dartmouth Police Department and are all sued in their individual and official capacities. Among other things, the complaint alleges that defendants violated Ramos's civil rights when they arrested him for trespassing following his attempt to occupy a home at 40 Lynnwood Street in Dartmouth, Massachusetts.

The complaint was originally filed in Bristol Superior Court. On January 19, 2016, defendants removed the action to this Court on the ground that the complaint stated federal civil rights claims under 42 U.S.C. § 1983. On January 27, 2016, defendants filed a motion to dismiss the complaint. Plaintiff has not filed an opposition to that motion, choosing instead to file a motion to remand the case to state court on February 3, 2016, followed by a motion to amend the

complaint on February 11, 2016. For the following reasons, plaintiff's motions for remand and leave to file an amended complaint will be denied, and defendants' motion to dismiss will be granted.

## I. Background

The original complaint is relatively light on factual allegations. On July 20, 2015, Thomas Ramos entered a vacant property at 40 Lynnwood Street in Dartmouth, Massachusetts. (Compl. ¶ 5). According to the complaint, Ramos "did declare the property to be his possession and did so adversely to the owner." (*Id.*). Approximately one month later, on August 17, 2015, the Dartmouth Police Department received a report of suspicious activity at the property and dispatched officers Jorge Silva, Victor Morency, and Scott Stanton to investigate. (*Id.* ¶ 6).

Upon arrival at the property, the three officers spoke with Ramos, who told them that he lived at and owned the property, which he said he had acquired from the Federal National Mortgage Association ("FNMA"). (*Id.* ¶¶ 7-8). The complaint alleges that the defendants then arrested Ramos. (*Id.* ¶ 9).

The proposed amended complaint asserts additional factual allegations. According to the amended complaint, after Ramos informed the officers that he had acquired the property in question, defendant Morency made a telephone call to Charles Roberts, using a speakerphone feature so that Ramos could hear the conversation. (Am. Compl. ¶ 12).[1] Roberts told Morency that he was familiar with Ramos from past dealings, and that Ramos had filed fraudulent "adverse possession" forms with the registry of deeds. (*Id.* ¶¶ 13-14). The proposed amended complaint further alleges that Roberts instructed the officers to arrest Ramos and remove him

[1] The proposed amended complaint names the "Charles Roberts Association" as defendant. The factual allegations, however, suggest that Morency's phone call was made to an individual named Charles Roberts; presumably, that person is the owner of the entity named as defendant.

from the property, which they did. (*Id.* ¶¶ 14-15). Following Ramos's arrest, the officers entered the property without a warrant and seized some of his property there. (*Id.* at ¶ 17).

Ramos was charged with breaking and entering a building in the daytime with the intent to commit a felony in violation of Mass. Gen. Laws ch. 266, § 18B and destruction of property in violation of Mass. Gen. Laws ch. 266, § 127A. (Defs. Mem. Ex. A).[2] Ramos pleaded guilty to both counts at a pre-trial hearing on September 17, 2015. (*Id.*).

The original complaint appears to allege four causes of action in three counts against the three officers: Count One asserts a common-law claim for abuse of process; Count Two asserts a claim for intentional infliction of emotional distress; and Count Three asserts claims for civil rights violations under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11I.

The proposed amended complaint would add two new defendants—the Charles Roberts Association, a Massachusetts corporation, and FNMA. The new defendants appear to be added to Ramos's claims for abuse of process (Count One), intentional infliction of emotional distress (Count Two), and the claim for civil rights violations under Massachusetts law (Count Three). In addition, the proposed amended complaint asserts two new causes of action. Count Four asserts a claim against new defendants Charles Roberts Association and FNMA only for "summary process violation[s]" under Mass. Gen. Laws ch. 184, § 18. Count Five asserts a common-law claim for defamation against existing defendant Silva only.

## II. <u>Plaintiff's Motion to Remand</u>

A defendant may remove any civil action over which the federal district court has

---

[2] The original complaint did not refer to Ramos's prosecution or guilty plea at all. Instead, defendants provided a copy of the relevant state court docket sheets in connection with their motion to dismiss. The Court may consider official public records and documents that are central to plaintiff's claims on a motion to dismiss without converting the motion into one for summary judgment. *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 141 n.12 (1st Cir. 2015). Accordingly, the Court will consider the docket sheets from Ramos's state-court prosecution in deciding the present motions.

original jurisdiction. 28 U.S.C. § 1441(a). A district court's original jurisdiction extends, among other things, to claims that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Whether a claim "arises under" federal law generally depends on an evaluation of the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Here, Count Three of the complaint specifically asserts a claim under 42 U.S.C. § 1983 based on alleged violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. That claim, alone, is sufficient to establish a cause of action under federal law, and therefore to provide subject-matter jurisdiction. When an action includes both federal-law claims and state-law claims, the district court may exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1441(c). Accordingly, plaintiff's motion to remand the case to state court will be denied.

## III. Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to Amend

Defendants filed their motion to dismiss this case shortly after removal. In response, Ramos did not oppose that motion directly, but instead filed a motion for leave to amend the complaint to add two new claims and two additional defendants. Because the motion to dismiss and the motion to amend are both analyzed under essentially the same standard, the Court will analyze all of Ramos's original and proposed claims together.

### A. Legal Standard

Fed. R. Civ. P. 15 provides that a party may amend its pleading only under certain circumstances. If the pleading is one to which a responsive pleading is required, a party may amend its pleading as a matter of course within 21 days of the service of the responsive pleading or service of a motion under Fed. R. Civ. P. 12, whichever is earlier. Fed. R. Civ. P. 15(1)(B).

After that time, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a motion to amend, the Court must "examine the totality of the circumstances and [ ] exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006) (citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)). However, leave to amend may be denied for several reasons, including, *inter alia*, "futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009).

When considering an opposition to a motion to amend on the grounds that amending the complaint would be futile, the Court must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Kenney v. State Street Corp.*, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011); *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A claim is plausible on its face if it raises a right to relief beyond a speculative level by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court will generally accept all well-pleaded factual allegations in a complaint as true and draw all reasonable inferences in a plaintiff's favor, *id.*, the Court will disregard any "legal conclusion[s] couched as . . . fact" or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernadez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**B. Analysis**

Taken as a whole, Ramos's claims purport to arise out of his belief that he "adversely possessed" the property at 40 Lynnwood Street where he was arrested. In Massachusetts, the acquisition of title through adverse possession requires "proof of non-permissive use which is actual, open, notorious, exclusive and adverse for twenty years." *Lawrence v. Town of Concord*, 439 Mass. 416, 421 (2003) (quoting *Kendall v. Selvaggio*, 413 Mass. 619, 621-622 (1992)); Mass. Gen. Laws ch. 260, § 21. Ramos alleges that he occupied the property beginning on July 20, 2015, twenty-eight days before his arrest on August 17, 2015. (Compl. ¶ 5). Even assuming that Ramos's use of the property was open, notorious, and exclusive, his use still falls short of the law's twenty-year requirement by more than nineteen years and eleven months. Thus, as a matter of law, the complaint does not allege facts that would establish that Ramos successfully acquired the property by adverse possession. It is therefore clear that his claims—which all stem from his alleged ownership of the property—must be dismissed.

**1. Abuse of Process Claim (Count One)**

Count One of both the original and proposed amended complaints asserts a claim for abuse of process.[3] To establish a claim of abuse of process, a plaintiff must show (1) that "process" was used against him (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred as a result. *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011).[4] "To sustain the claim, 'the fact finder must find that process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular

[3] Other than the proposed addition of Charles Roberts Association and FNMA as defendants, there are no material changes to Count One in the proposed amended complaint.

[4] "More precisely the word 'process' in the context of abuse of process means causing papers to be issued by a court to bring a party or property within its jurisdiction." *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 n.9 (2000) (quotation and internal citation omitted).

process employed.'" *Id.* (quoting *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010)). "An ulterior purpose is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly." *Psy-Ed*, 459 Mass. at 713 n.35.

The complaint alleges that defendants instituted criminal proceedings against Ramos "with the intent to eject/evict" him from the property. (Compl. ¶ 11; Am. Compl. ¶ 19). Assuming that to be true, it does not establish that defendants tried to gain a collateral advantage over Ramos through his arrest and prosecution. "The essence of [abuse of process] is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 26 (1982) (quotation and internal citation omitted). Here, the complaint establishes beyond question that defendants used the legal process of arrest and prosecution for the legitimate purpose of removing Ramos from a home where he had no legal right to possession. Nor are there any other factual assertions alleging that defendants had some other "ulterior or illegitimate purpose" in pursuing Ramos's prosecution. Accordingly, plaintiff's motion for leave to amend the complaint to add new defendants to Count One will be denied, and his claim for abuse of process against the officer defendants in the original complaint will be dismissed.

**2. <u>Intentional Infliction of Emotional Distress (Count Two)</u>**

Count Two of both complaints asserts a claim for intentional infliction of emotional distress.[5] To establish a claim for intentional infliction of emotional distress under

[5] As with Count One, the only material difference between the original complaint and the proposed amended complaint appears to be the addition of Charles Roberts Association and FNMA as defendants.

Massachusetts law, the plaintiff must prove:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citations and internal quotation marks omitted). Courts apply a "very high" standard to claims of intentional infliction of emotional distress, especially with respect to the requirement that the conduct in question is extreme and outrageous, beyond all possible bounds of decency in a civilized community. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). Here, the defendants' conduct in arresting Ramos was neither extreme nor outrageous, and the complaint contains no additional facts that state a plausible claim for intentional or reckless infliction of emotional distress. Accordingly, plaintiff's motion for leave to amend the complaint to add new defendants to Count Two will be denied, and his claim for intentional infliction of emotional distress against the officer defendants in the original complaint will be dismissed.

### 3. <u>Civil Rights Violations (Count Three)</u>

Count Three of both complaints asserts a claim for civil rights violations under both federal and state civil rights statutes.[6]

#### a. <u>42 U.S.C. § 1983</u>

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 claim is not cognizable if its success would necessarily imply the invalidity of an underlying conviction or sentence. 512 U.S.

[6] Plaintiff's claim under federal law is brought against the officer defendants only in both complaints. The proposed amended complaint adds the two additional defendants to the state civil rights claim under Mass. Gen. Laws ch. 12, § 11I only.

477, 486-87 (1994). In determining whether a § 1983 claim is barred under *Heck*, the Court "must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by 'negat[ing] an element of the offense of which he [was] convicted.'" *Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006) (quoting *Heck*, 512 U.S. at 486 n.6).

Defendants contend that Ramos's guilty plea to the charges of breaking and entering and destruction of property precludes him from now asserting a claim under 42 U.S.C. § 1983. Although neither the original complaint nor the proposed amended complaint specifically allege the precise basis for Ramos's assertion that his constitutional rights were violated, it appears that, as with the other counts, the § 1983 claim arises solely from his arrest by defendants and subsequent prosecution.[7] Thus, in order for Ramos to succeed on his § 1983 claim would require a finding that the arrest itself was unlawful, which necessarily would invalidate his subsequent conviction. As a result, the claim under 42 U.S.C. § 1983 against the officer defendants is barred under *Heck* and will be dismissed.[8]

**b. <u>Massachusetts Civil Rights Act</u>**

Count Three also asserts a claim under the Massachusetts Civil Rights Act against all defendants. The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation, or coercion." *See Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989). To establish a claim under the MCRA, Ramos

---

[7] The complaint does not, for example, allege that the officers used excessive force in arresting Ramos.

[8] It is possible that Ramos's § 1983 claim is based on the new assertion in the proposed amended complaint that the officers searched for and seized personal property belonging to him; if so, the claim is not cognizable because Ramos could have had no objectively reasonable expectation of privacy in the home. *See Amezquita v. Hernandez-Colon*, 518 F.2d 8, 10-12 (1st Cir.), *cert. denied*, 424 U.S. 916 (1976); *accord Commonwealth v. Williams*, 453 Mass. 203, 209-10 (2009) (listing cases).

"must prove that (1) [his] exercise or enjoyment of rights secured by the Constitution or the laws of the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" *Id.* A "threat" means the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474 (1994). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do. *Id.* On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do.

For the reasons previously stated, defendants have not interfered with Ramos's "exercise or enjoyment of rights secured by the Constitution or the laws of the United States or the Commonwealth." Therefore, the MCRA claim will be dismissed. Moreover, and in any event, the complaint has failed to identify any threats, intimidation, or coercion on the part of any defendant that are sufficient to give rise to a claim under the MCRA. Accordingly, plaintiff's motion for leave to amend the complaint to add new defendants to Count Three will be denied, and his claim under the Massachusetts Civil Rights Act against the officer defendants in the original complaint will be dismissed.

### 4. Proposed Defamation Claim

Proposed Count Five alleges a claim for defamation against Silva in his individual capacity. To establish a defamation claim under Massachusetts law, a plaintiff must show (1) that the defendant made a statement concerning the plaintiff to a third party; (2) that the

statement could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss or is actionable without proof of economic loss. *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30 (2003)).

The amended complaint alleges in Count Five that defendant Silva "did publish by printing and writing 'realty scams' as Plaintiff's occupation and deleted the previous entry that read 'Paralegal.'" (Am. Compl. ¶ 28). However, the amended complaint does not include any further context in which the alleged defamatory statement was made; for example, there is no indication that the statement was seen by a third party, nor does the proposed amended complaint allege economic loss associated with the statement.[9] Even if the Court were to grant plaintiff's motion for leave to add a claim for defamation against defendant Silva, that claim would not able to withstand a motion to dismiss. Accordingly, plaintiff's motion for leave to amend the complaint to add a claim for defamation will be denied.

**5. <u>Proposed "Summary Process" Claim</u>**

Proposed Count Four alleges a claim for "summary process violation[s]" under Mass. Gen. Laws. ch. 184, § 18 and Mass. Gen. Laws ch. 239, § 1 against proposed new defendants Charles Roberts Association and FNMA. Chapter 184, § 18 provides:

> No person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law.

[9] "Four types of statements are actionable without proof of economic loss: (1) statements that constitute libel; (2) statements that charge the plaintiff with a crime; (3) statements that allege that the plaintiff has certain diseases; and (4) statements that may prejudice the plaintiff's profession or business." *Damon v. Moore*, 520 F.3d 98, 104 (1st Cir. 2008) (citing *Ravnikar*, 438 Mass. at 630). Arguably, a written statement that Ramos's occupation was "realty scams" might qualify under either the first or second categories listed above. However, if such a statement was made in the context of the initiation of a judicial proceeding, as seems likely, the statement-maker would be subject to an absolute privilege. *See Correllas v. Viveiros*, 410 Mass. 314, 321-22 (1991) (citing *Kipp v. Kueker*, 7 Mass. App. Ct. 206, 210 (1979)).

Mass. Gen. Laws Ann. ch. 184, § 18.  Chapter 239 contains the procedures involved in summary process for possession of land.  Although the Court is highly skeptical that Ramos, as a mere trespasser, was entitled to the statutory procedures under the facts alleged in the complaint, the issue has not been raised or briefed by the officer defendants.

In determining whether to grant a motion to amend, the Court must "examine the totality of the circumstances and . . . exercise its informed discretion in constructing a balance of pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).  The proposed amended complaint brings Count Four against the proposed new defendants only and does not include the existing officer defendants.  As set forth above, the Court will grant the officer defendants' motion to dismiss with respect to Counts One, Two, and Three, and will also deny leave to amend the complaint to add new defendants to those counts.  The Court will also deny leave to amend the complaint to add Count Five against defendant Silva.  As a result, other than proposed Count Four, no claims or defendants will remain in the case.  Thus, the Court sees no reason to grant plaintiff's motion for leave to amend simply so he can add an entirely new and dubious count for a summary process violation against entirely new defendants, to a suit that would otherwise be dismissed in its entirety.  If plaintiff desires to bring such a claim against the proposed new defendants, he may attempt to do so in a new proceeding.  Leave to amend the complaint to add Count Four will therefore be denied.

## IV.   Conclusion

For the foregoing reasons, plaintiff's motion to remand is DENIED, plaintiff's motion for leave to amend the complaint is DENIED, and defendants' motion to dismiss is GRANTED.

**So Ordered.**

Dated: April 13, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge